IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL FETHEROLF,

    Petitioner,

    v.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:19-CV-00168
JUDGE SARAH D. MORRISON
Chief Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

On February 7, 2020, the Magistrate Judge issued an Order and Report and Recommendation recommending that the petition for a writ of habeas corpus be dismissed and denying Petitioner's Motion to Amend and Stay, Motion for Nonpublication of Documents, and Motion for an Evidentiary Hearing. (ECF No. 68.) Petitioner has filed an Objection and Supplemental Objection to the Magistrate Judge's Order and Report and Recommendation. (ECF Nos. 71, 72.) Petitioner also filed an untimely Second Supplemental Objection to the Magistrate Judge's Order and Report and Recommendation. (ECF No. 73.) Pursuant to 28 U.S.C. § 636(b), this Court has conducted a *de novo* review. For the reasons that follow, Petitioner's Objection and Supplemental Objections (ECF Nos. 71, 72, 73) are **OVERRULED**. The Order and Report and Recommendation is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED**.

The Court **DECLINES** to issue a certificate of appealability.

## I.    PROCEDURAL BACKGROUND

On March 11, 2016, Petitioner Michael Fetherolf was convicted after a jury trial in the Union County Court of Common Pleas on three counts—rape (digital penetration), in violation of O.RC. § 2907.02(A)(1)(b), (B); gross sexual imposition, in violation of O.R.C. § 2907.05(B),

(C)(2); and witness intimidation, in violation of O.R.C. § 2921.04(B), (D). (PAGEID 800–03.)
Mr. Fetherolf was represented by attorney Jeffery Blosser at trial. (PAGEID 1548.) Since his
conviction, Mr. Fetherolf has made numerous efforts to have his convictions reversed. What
follows are those that are relevant to the disposition of his petition.

On March 30, 2016, Mr. Fetherolf filed a *pro se* motion for a new trial (the "2016
Motion"), which was denied. (PAGEID 821–41, 886.) Mr. Fetherolf appealed both his
conviction and the denial of the 2016 Motion, and the two appeals were consolidated. (PAGEID
887, 892, 904.)

On November 29, 2016, Mr. Fetherolf, now represented by Carrie Wood, filed his
appellate brief in which he asserted four errors by the trial court in the proceedings below—
allowing three witnesses to testify to the veracity of the victim's statements, failing to exclude
details of Mr. Fetherolf's prior conviction and punishment for failure to pay child support, failing
to exclude a portion of the testimony of a State witness (Pamela Hawkins), and denying Mr.
Fetherolf's 2016 Motion due to the State's failure to disclose Ms. Hawkins's full criminal
history. (PAGEID 905–37.) In this brief, Mr. Fetherolf also asserted that his "right to a fair trial
was violated by repeated instances of prosecutorial misconduct" due to the aforementioned
errors, individually and cumulatively. (PAGEID 937–39.)

On April 10, 2017, the Ohio Third District Court of Appeals (the "Third District")
affirmed Mr. Fetherolf's convictions and sentence. *See State v. Fetherolf*, No. 14-16-10, 2017
WL 1316207 (Ohio Ct. App. Apr. 10, 2017). On July 6, 2017, Mr. Fetherolf moved to reopen his
appeal under Ohio Rule of Appellate Procedure 26(B). (PAGEID 1207–21.) The Third District
denied the motion. (PAGEID 1254–55.) Mr. Fetherolf noticed appeals to the Ohio Supreme
Court regarding both the Third District's affirmance of his convictions and its denial of his Rule

2

26(B) motion, but the Supreme Court declined to accept jurisdiction of either appeal. (PAGEID 1080–81, 1171, 1256–57, 1330.)

On April 25, 2017, Mr. Fetherolf filed a habeas petition in state court, pursuant to O.R.C. § 2953.21, in which he made various claims of ineffective assistance of trial counsel ("IAC"). (PAGEID 1184–91.) The trial court denied the petition due to *res judicata*, holding that the claims raised were required to have been raised on direct appeal. (PAGEID 1201–06.) Mr. Fetherolf did not appeal that decision.

Finally, on January 16, 2019, Mr. Fetherolf filed the instant action, (ECF No. 1), and on June 10, 2019, he filed another motion for a new trial in state court (the "2019 Motion"), (PAGEID 1527–40).

In his habeas petition, Mr. Fetherolf asserts nine grounds for reversal of his conviction. Each ground contains multiple sub-parts, but the gist of each is as follows:

1) He was denied a fair trial due to the improper admission of "other acts" evidence during the testimony of Ms. Hawkins. Specifically, Mr. Fetherolf objects that Ms. Hawkins was permitted to testify that a) he verbally and physically abused her, b) he was on felony probation for failure to pay child support, c) she witnessed him looking at child pornography, and d) he made a prurient request for her to dress up like a little girl. As a part of claim 1(b), Mr. Fetherolf further objects that other witnesses were also permitted to testify about his conviction for failure to pay child support and his subsequent probation;

2) The State committed a *Brady* violation by failing to disclose evidence. Specifically, the State failed to disclose a) Ms. Hawkins's complete criminal record and b) some of the victim's psychological records;

3) The trial court violated his rights under the Confrontation Clause by allowing into evidence perjured testimony and inadmissible hearsay testimony that was inconsistent with other evidence introduced by the State;

4) The evidence was insufficient to sustain a conviction;

5) The prosecutor committed misconduct by introducing improper testimony, committing *Brady* violations, eliciting false and improper testimony, and making misstatements to the judge and jury, as well as cumulative misconduct;

6) The trial court erred in allowing the State's witnesses to vouch for and bolster the credibility of the victim;

7) Trial counsel was ineffective;

8) Appellate counsel was ineffective; and

9) The trial court improperly allowed for the admission of DNA evidence.

(ECF No. 1.)

On February 7, 2020, the Magistrate Judge issued an order denying three pending motions filed by Mr. Fetherolf—his Motion to Amend and Stay his petition (ECF No. 53), his Motion for Nonpublication of Documents (ECF No. 59), and his Motion for Evidentiary Hearing (ECF No. 60). (ECF No. 68, at 10–19.) Mr. Fetherolf objects to the denial of the Motion to Amend and the Motion for Evidentiary Hearing. (ECF No. 71.)

The Magistrate also issued a Report & Recommendation ("R&R") recommending that the petition be dismissed because Mr. Fetherolf's claims are either procedurally defaulted or are without merit. (ECF No. 68, at 20–50.) Mr. Fetherolf lodged various objections that will be addressed below. (ECF No. 71.)

After filing his initial objections, Mr. Fetherolf filed a confusing document that purports to be supplemental objections to the R&R. (ECF No. 72.) This document covers some of the same ground as Mr. Fetherolf's initial objections although it also appears to be another request to amend his petition, and the Court construes it as such.

Mr. Fetherolf subsequently filed additional supplemental objections to the R&R. (ECF No. 73.) These objections were filed one month after the objections deadline, but in any event, they are duplicative of his previously filed objections.

Respondent did not file a response to any of Mr. Fetherolf's objections, and the time to do so has passed.

## II.     Procedural Default

The Magistrate recommended dismissal of most of Mr. Fetherolf's claims due to procedural default and similarly denied the Motion to Amend because Mr. Fetherolf seeks to add or amend defaulted claims. Mr. Fetherolf argues that his claims have not been procedurally defaulted because he previously raised them in the 2016 Motion and/or in the 2019 Motion. This objection is rooted in a misunderstanding of the concept of procedural default.

### A.     Legal Background

Fundamental to a federal court's review of state convictions are the concepts of exhaustion of state remedies and procedural default. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). To begin with, the petitioner "must exhaust available state remedies . . . ." *Id.* That includes raising his claims on direct appeal in state court. *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004). Moreover, those claims must have been raised under the same theories as are being pursued on habeas review. *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013); *see Bagley*, 380 F.3d at 969 (failing to exhaust some theories of prosecutorial misconduct but not

others means that the unexhausted theories are defaulted). Unexhausted claims for which the state deadlines for exhaustion have run are procedurally defaulted. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A claim has also been procedurally defaulted if the state court denied the claim "based on an adequate and independent state procedural rule." *Davila*, 137 S. Ct. at 2064; *accord Hargrave-Thomas v. Yukins*, 374 F.3d 383, 387 (6th Cir. 2004) ("[A] claim [is] procedurally defaulted in state court . . . if the last state court to render a judgment in the case rejected the claim because it was not presented in accordance with the state's procedural rules."). A claim is procedurally defaulted when 1) the petitioner has failed to comply with an applicable state procedural rule, 2) the procedural rule is one that the state court actually enforces, 3) "the state procedural rule is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim," and 4) the petitioner cannot demonstrate cause for his failure to comply and prejudice resulting from the error. *Bagley*, 380 F.3d at 966. Where there has been a procedural default, the habeas court must "defer to the state's procedural ruling and refuse to consider the claim on the merits." *Peoples v. Lafler*, 734 F.3d 503, 510 (6th Cir. 2013).

**B.     Analysis**

Most of Mr. Fetherolf's asserted claims are defaulted for one of three reasons: he did not exhaust them and the time for exhaustion has now expired, he did not comply with Ohio's doctrine of *res judicata*, or his counsel did not contemporaneously object at trial. And he cannot demonstrate the necessary cause and prejudice to overcome default.

### 1. Defaulted claims

"[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This procedure respects a state's interest in correcting its own mistakes. *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000).

This exhaustion principle is interrelated with Ohio's doctrine of *res judicata*. The doctrine bars consideration of constitutional claims that "have already been or could have been fully litigated either before judgment or on direct appeal from that judgment." *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). The *res judicata* doctrine is a rule that the Ohio courts consistently enforce, and it constitutes an adequate and independent state ground for barring habeas review. *Bagley*, 380 F.3d at 967.

Mr. Fetherolf raised five claims on direct appeal in state court: the trial court erred in failing to exclude the details of his conviction for failure to pay child support (Claim 1(b)) and in failing to exclude Ms. Hawkins's testimony that Mr. Fetherolf had asked her to dress up like a little girl (Claim 1(d)); the State committed a *Brady* violation when it failed to disclose Ms. Hawkins's complete criminal record (Claim 2(a)); the trial court erroneously permitted the State's witnesses to vouch for and bolster the credibility of the victim (Claim 6); and the prosecutor committed misconduct by introducing the evidence underlying the aforementioned errors, either individually or cumulatively (part of Claim 5). (PAGEID 905–39.) Only these five claims were exhausted on direct appeal. Mr. Fetherolf's other claims have thus been presumptively defaulted since he did not raise them during "the State's established appellate review process."

Mr. Fetherolf objects to the Magistrate's exhaustion determination by asserting that he raised his defaulted claims in the 2016 Motion and 2019 Motion. This is irrelevant. Claims are only exhausted if they are raised on direct appeal. Even though Mr. Fetherolf appealed the trial court's denial of his 2016 Motion, that did not exhaust every claim raised in the 2016 Motion. Only the claims actually *raised on appeal* (the claims identified above) were exhausted and are ripe for habeas review. As for the 2019 Motion, it is irrelevant to these proceedings. The state court determined that the motion was not timely filed because it did not present new evidence. (PAGEID 1544–47.) This is a state court procedural default determination to which this Court must defer. *See Peoples*, 734 F.3d at 510.

Mr. Fetherolf also argues that the Magistrate conflated exhaustion and procedural default and criticizes the Magistrate for finding default when the state courts did not mention a default. He overlooks the fact that failure to comply with the exhaustion requirement *results in* a procedural default. Moreover, there is no reason why the state courts would have mentioned a default due to exhaustion since they never would have had cause to weigh in on the issue.

Mr. Fetherolf also failed to exhaust his IAC claims in compliance with Ohio's rules of *res judicata*, so those claims have been procedurally defaulted too. Ohio law "'contemplate[s] two kinds of ineffective assistance of counsel claims, those based only on evidence in the trial record and those based in part on evidence outside the record.'" *White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 277 (6th Cir. 2019) (quoting *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013)). IAC claims are governed by the doctrine of res judicata and must be raised on direct appeal so long as the defendant is represented by new counsel and "the issue could fairly have been determined without resort to evidence outside the record." *Monzo*, 281 F.3d 576–77. However, practically speaking, IAC claims based on evidence outside the record

cannot be raised on direct appeal. *White*, 940 F.3d at 277. Thus, because Mr. Fetherolf was represented by different counsel on appeal, he was required to raise on direct appeal any IAC claim based only on the trial record. Because he failed to do so, IAC claims based only on record evidence have been defaulted.

Any IAC claims based on evidence outside the record have also been defaulted but for a different reason. Although these claims were not required to be raised on direct appeal, Ohio law required them to be raised in the habeas proceedings provided for by O.R.C. § 2953.21. *Williams v. Lazaroff*, 648 F. App'x 548, 552 (6th Cir. 2016). Mr. Fetherolf initially complied with this procedural requirement; he filed a state habeas petition in which he raised various IAC claims. But the appeal was denied, and he did not appeal that denial. He thus failed to "give the state courts [a] full opportunity" to resolve the issue. *O'Sullivan*, 526 U.S. at 845; *see* Ohio Rev. Code Ann. § 2953.23(B) (West 2020) (outlining right of appeal of postconviction relief petition under Ohio law). Mr. Fetherolf has thus entirely defaulted his IAC claims (Claim 7).

Mr. Fetherolf also failed to exhaust his ineffective assistance of appellate counsel ("IAAC") claims. Ohio law requires that IAAC claims be raised in a Rule 26(B) motion. *Lazaroff*, 648 F. App'x at 553. And only the particular IAAC claims raised in that Rule 26(B) motion are considered exhausted for purposes of habeas review. *See id.*

In his Rule 26(B) motion, Mr. Fetherolf alleged IAAC based on Ms. Wood's failure to argue that: the evidence was insufficient to sustain a conviction; the prosecutor had committed misconduct; and the trial court erred in allowing the State to elicit inadmissible testimony, in failing to require the State to turn over all discovery and *Brady* material, and in allowing Ms. Hawkins to testify. (PAGEID 1207–21.) However, Mr. Fetherolf has since abandoned most of these claims by failing to raise them in his habeas petition. The Court can only consider IAAC

claims that Mr. Fetherolf both exhausted in his Rule 26(B) motion *and* presented for review in his habeas petition. The only claim that meets both criteria is the sufficiency of the evidence claim (part of Claim 8). The remaining IAAC claims that Mr. Fetherolf now brings were not brought in his Rule 26(B) motion and thus are defaulted.

Lastly, although he exhausted the claim on direct appeal, Mr. Fetherolf has also procedurally defaulted Claim 6. Ohio's contemporaneous objection rule is another adequate and independent state procedural ground barring review. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Thus, where the state courts have determined that a claim is reviewable only for plain error due to lack of a contemporaneous objection, the claim has been procedurally defaulted for purposes of habeas review. *See Palmer v. Bagley*, 330 F. App'x 92, 101 (6th Cir. 2009) ("When a state appellate court reviews an issue for plain error, we view it as the state's enforcement of a procedural default."); *Hinkle*, 271 F.3d at 244–45. The Magistrate properly found that Claim 6 was defaulted based on the lack of contemporaneous objection by Mr. Fetherolf's counsel and the Third District's enforcement of this rule.

Mr. Fetherolf argues that Claim 6 is not defaulted because the state court applied plain error review to the wrong issue. This argument misses the point. The Third District applied plain error because no objection was raised to the testimony at issue. It is that initial lack of objection, regardless of the scope of the Third District's analysis, that gave rise to the procedural default.

In sum, but for the ability to prove cause and prejudice Mr. Fetherolf has procedurally defaulted Claims 1(a), 1(c), 2(b), 3, 4, 6, 7, and 9, as well as most of Claims 5 and 8.

### 2. Excuses for default

Procedurally defaulted claims may be reviewed where "the petitioner can demonstrate (1) cause for the default and actual prejudice, or (2) that the failure to consider the claim will result

in a fundamental miscarriage of justice." *Bagley*, 380 F.3d at 966. As to the first, "cause" can only be shown through an objective external factor. *Davila*, 137 S. Ct. at 2065. As to the second, a "fundamental miscarriage of justice" requires the petitioner to show "by clear and convincing evidence that but for constitutional error no reasonable juror would have found him guilty of the crime . . . ." *Greer v. Mitchell*, 264 F.3d 663, 673 (6th Cir. 2001). Similarly, a claim of "actual innocence" can overcome a procedural bar. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

### a. Cause and prejudice

The only reasons that Mr. Fetherolf provides for why his procedural default should be excused are the asserted ineffectiveness of his trial counsel and appellate counsel. Attorney error can be a legitimate cause of default but "only if that error amounted to a deprivation of the constitutional right to counsel." *Davila*, 137 S. Ct. at 2065. In addition, as the Magistrate explained, ineffective assistance "is *itself* an independent constitutional claim" that can be defaulted. *Edwards*, 529 U.S. at 451–52. And a defaulted claim of IAC or IAAC cannot be used to establish cause for procedural default. *Id.* at 452. Thus, IAC cannot be a cause for default in this case because Mr. Fetherolf defaulted all of his IAC claims. In the same vein, IAAC cannot be a cause for default on any claims except the sufficiency of the evidence claim, since that is the only IAAC claim that is not procedurally defaulted.

But while Mr. Fetherolf has established cause for the procedural default of his sufficiency of the evidence claim, he has not established prejudice.[1] Prejudice can be satisfied in this context by proving *Strickland* prejudice, meaning that "'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Joseph v. Coyle*, 469 F.3d 441, 462–63 (6th Cir. 2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). While proving

---

[1] Mr. Fetherolf's failure to establish cause on the other claims means that the Court need not consider prejudice on those claims. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).

*Strickland* prejudice is sufficient to prove prejudice to overcome default, it may not be necessary. *See id.* ("[I]t follows that establishing *Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice."). But since Mr. Fetherolf has alleged no other way in which this asserted error prejudiced him, the Court need not examine any other means of proving prejudice.

In this context, *Strickland* prejudice means that the sufficiency of the evidence claim would have been successful had Ms. Wood raised this claim on appeal. It would not have been. As the Third District and the Magistrate extensively explained, there was more than sufficient evidence to sustain a conviction on each charged count.

Mr. Fetherolf objects that the Magistrate did not explicitly review each element under state law. Even assuming that the Magistrate was required to conduct such a formulaic review, Mr. Fetherolf has only argued that the State failed to prove one element (penetration) of one of the crimes of which he was convicted (rape). (ECF No. 71, at 37–40.) The Court construes this as a waiver of any argument that the State introduced insufficient evidence as to any of the other elements.

His argument is based on his perception that some of the testimony at trial was to be believed while other testimony was not and that, in his opinion, the more credible evidence did not prove penetration. This analysis directly contravenes how a sufficiency of the evidence claim is to be analyzed. First, the evidence must be viewed "in the light most favorable to the *prosecution*," not to the defendant. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added). Second, the jury's determination as to the evidence is to be respected so long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Here, the answer to the question of whether any rational trier of fact could have done

so is undoubtedly yes. Thus, because Mr. Fetherolf's sufficiency of the evidence claim had no chance at success, he was not prejudiced by Ms. Wood's failure to raise it. The failure to raise this claim thus cannot excuse any procedural default.

It is for the same reason that Mr. Fetherolf's IAAC claim on this ground does not survive merits review. As the Magistrate explained, a sufficiency of the evidence claim would not have succeeded on appeal, so Ms. Wood was not ineffective for not raising it. *See Greer*, 264 F.3d at 676 ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.").

### b.     Miscarriage of justice and actual innocence

In spite of his procedural default and the lack of cause and prejudice, Mr. Fetherolf would still be entitled to merits review of his claims if he could prove a fundamental miscarriage of justice or actual innocence. The former requires proof "by clear and convincing evidence that but for constitutional error no reasonable juror would have found him guilty of the crime . . . ." *Id.* at 673. The latter requires "a credible showing of actual innocence . . . ." *McQuiggin*, 569 U.S. at 392.

As with the above explanation for why a sufficiency of the evidence claim would not have been successful, the Court agrees with the Third District and the Magistrate that based on the evidence introduced at trial, Mr. Fetherolf has not shown that no reasonable jury would have found him guilty or that there is a credible claim for actual innocence.

Mr. Fetherolf's asserted "new evidence" does not alter this analysis. The "new evidence" at issue is a letter from a DNA expert, and as the trial court and the Magistrate found, this evidence is not actually "new." (ECF No. 68, at 12 & n.2.) This is so for two reasons. First, while the actual letter did not previously exist, Mr. Fetherolf had all the information to be able to

13

consult a DNA expert prior to trial. Second, the information in the letter is not new information; Mr. Fetherolf previously raised these same concerns about the DNA evidence in his earlier motions.

But even assuming that this letter constitutes "new evidence," not just any "new evidence" is sufficient to prove actual innocence. It must be "new evidence of *innocence*[,]" meaning "factual innocence, not merely legal insufficiency." *Casey v. Tennessee*, 399 F. App'x 47, 48 (6th Cir. 2010) (emphasis added) (internal quotation marks omitted). Not only does the letter not prove Mr. Fetherolf's innocence, it proves his guilt. It affirms that "the DNA profile reported is consistent" with Mr. Fetherolf's. (ECF No. 53-6, at 2.) While aspects of this letter may have been relevant or helpful for purposes of trial, it is not evidence of factual innocence and is therefore irrelevant to the actual innocence analysis.

### III.    MERITS REVIEW

The Court has reviewed all of Mr. Fetherolf's objections, and none are meritorious. However, the Court will specifically address some of the objections pertaining to the Magistrate's merits review. Mr. Fetherolf begins with several general objections. First, he faults the Magistrate for not determining that the state court findings were supported by the record. In support of this proposition, he cites a 1988 case that predates the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which radically changed habeas review. (ECF No. 71, at 2.) But Mr. Fetherolf's case is governed by AEDPA, which limits habeas relief to cases where the state courts reached "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402–03 (2000). The Magistrate was not required to search for support for

14

each factual finding of the state court in the record but was only required to determine that the factual findings on which the state courts' decisions were based were not "unreasonable." The Magistrate appropriately conducted this inquiry. Similarly, Mr. Fetherolf alleges that the state courts misstated facts, but he fails to identify any "unreasonable" material factual determinations.

Second, Mr. Fetherolf focuses a significant portion of his petition and his objections on asserted factual inconsistencies in the record, and he argues that the Magistrate did not address these inconsistencies. These asserted inconsistencies were for the jury to reconcile, and it is not the job of a habeas court to second-guess the jury's factual findings so long as they are reasonable. *Cf. Mantzke v. Province*, 351 F. App'x 293, 295 (10th Cir. 2009) ("The jury apparently credited this testimony, and we are not free to overrule the jury's credibility finding on habeas review absent a showing of an 'unreasonable determination of the facts in light of the evidence.'" (quoting 28 U.S.C. § 2254(d)(2))); *Cross v. Stovall*, 238 F. App'x 32, 41 (6th Cir. 2007) ("By delivering its guilty verdicts, the jury obviously concluded that the witnesses were believable.").

Third, Mr. Fetherolf makes a blanket statement that the state court rulings were too ambiguous to be relied on. He points to no specific examples, and this claim is not supported by the record.

Fourth, he asserts that the state courts failed to conduct a harmless error analysis. That, too, is incorrect. The Third District made several findings that Mr. Fetherolf was not prejudiced by any asserted errors. *See, e.g.*, *Fetherolf*, 2017 WL 1316207, at *7 ("[W]e cannot find that it was plain error in this instance."; *id.* at *9 ("[We] cannot find that such an error prejudiced Fetherolf given the evidence presented at trial . . . ."); *id.* at *10 ("[W]e cannot find that the mentions of Fetherolf's probation and his felony child support so tainted the proceedings that his

convictions must be reversed . . . ."). While the Third District may not have used the words "harmless error," Mr. Fetherolf points to no authority indicating that such talismanic language is required.

Beyond these general objections, rather than object to the Magistrate's findings, Mr. Fetherolf seeks to relitigate them, just as he seeks to relitigate the jury's findings to which the state courts were required to defer and the state court determinations to which this Court must defer. With regard to Claim 1(b) specifically, Mr. Fetherolf raises two objections, that the record was not developed enough for the state court to make a determination about strategy and that the trial court had no discretion to admit or exclude prior convictions. Even if true, neither is grounded in an unreasonable determination of the facts or is contrary to or an unreasonable application of federal law as determined by the Supreme Court, and this Court has no authority to disrupt the Third District's determination in this regard.

With regard to Claim 1(d), Mr. Fetherolf homes in on the Third District's statement that Ms. Hawkins's testimony was "undoubtedly prejudicial" and questions whether some of the witness's testimony was admissible. Regardless, the Third District deferred to the trial court, as it was obligated to do, specifically finding that the trial court had not abused its discretion. And this Court is required to defer to this determination. Again, this does not fit within § 2254(d)'s limited review.

Regarding Claim 2(a), Mr. Fetherolf focuses on the Third District's conclusion that the failure to turn over information about Ms. Hawkins's conviction was unintentional, but he ignores that the court also specifically found that the lack of disclosure did not impact his convictions. *Id.* at *12.

As for Claim 5, Mr. Fetherolf argues that the State committed prosecutorial misconduct by allowing witnesses to comment on the veracity of the victim, and he claims that this is reversible error under state law. (ECF No. 71, at 42 (citing *State v. Boston*, 545 N.E.2d 1220 (1989)).) Even assuming this to be true, it is, by definition, not an unreasonable determination of *federal* law and thus does not fall within this Court's limited review capability under § 2254(d).

None of Mr. Fetherolf's remaining objections has merit. His objections are

**OVERRULED**.

### III.     Motion to Amend and Motion for Evidentiary Hearing

For the reasons explained above, the Magistrate also properly denied Mr. Fetherolf's Motion to Amend. (ECF No. 53.) Amendment would be futile because the proposed amended and added claims are defaulted or are without merit. Similarly, to the extent that Mr. Fetherolf's supplemental objections seek to further amend or add claims, these claims, too, are defaulted or without merit and would be futile.

Regarding the Motion for Evidentiary Hearing, the Magistrate determined that a hearing was not warranted because Mr. Fetherolf procedurally defaulted most of the claims for which he sought a hearing, and he did not otherwise act diligently in attempting to develop the factual basis for these claims in state court. (ECF No. 68, at 18–19.) Regarding the procedural default determination, the Court has already determined that Mr. Fetherolf's objections are meritless. For the reasons discussed below, the remaining objections fail as well.

On habeas review, a state court's factual determinations are presumed to be correct. 28 U.S.C. § 2254(e)(1). Where a petitioner has failed to develop the factual basis of a claim in state court proceedings, a habeas court "shall not hold an evidentiary hearing on the claim" unless the petitioner shows that the claim relies on a new rule of constitutional law or on "a factual

17

predicate that could not have been previously discovered through the exercise of due diligence," *and* "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.* § 2254(e)(2).

Mr. Fetherolf's claim for a hearing does not meet either part of this test. He seeks a hearing primarily to develop testimony from his DNA expert. However, as was explained above, the facts in the expert's letter could have been previously discovered through the exercise of due diligence, and the facts outlined in the letter also do not cast doubt on the verdict. The other reasons underlying Mr. Fetherolf's request for a hearing fare no better; the facts that he seeks to develop could have previously been discovered through the exercise of due diligence, and they also do not establish by clear and convincing evidence that there is reason to question the verdict.

The Magistrate's determination that these motions should be denied is **AFFIRMED**.

## IV. CONCLUSION

Petitioner's Objection and Supplemental Objections (ECF Nos. 71, 72, 73) are **OVERRULED**. The Order and Report and Recommendation is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED**.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court now considers whether to issue a certificate of appealability. A final order in a habeas proceeding may not be appealed unless the petitioner is issued a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the

18

petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Similarly, when a claim has been denied on procedural grounds, a certificate of appealability may issue if the petitioner establishes "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

The Court is not persuaded that reasonable jurists would debate the dismissal of Petitioner's claims as procedurally defaulted or without merit. The Court therefore **DECLINES** to issue a certificate of appealability.

The Court certifies that an appeal would not be in good faith and that an application to proceed *in forma pauperis* on appeal should be **DENIED**.

> **IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**